1

2

3

4

5

6  # UNITED STATES DISTRICT COURT

7  # SOUTHERN DISTRICT OF CALIFORNIA

8

9  RELAUN DEADMON,                                CASE NO. 06cv1382-LAB (WMC)
   CDC #D-58206,

10                                                **ORDER ADOPTING IN PART
                                                   WITH MODIFICATIONS AND**
                              Plaintiff,          **REJECTING IN PART REPORT**
11     vs.                                        **AND RECOMMENDATION AND
                                                   DISMISSING ACTION**
12

13  N. GRANNIS, et al.,

14                                                [Dkt No. 21, 25[1]]
                              Defendants.

15          This 42 U.S.C. § 1983 prisoner civil rights matter is before the court on defendants'

16  Motion To Dismiss First Amended Complaint ("Motion") for failure to state a claim upon

17  which relief can be granted.  Dkt No. 21.  Plaintiff Relaun Deadmon ("Deadmon" or

18  "Plaintiff"), proceeding *pro se*, is a state prisoner challenging the constitutionality of the

19  proceedings associated with his confinement in administrative segregation and its conditions

20  as violations of his Fourteenth Amendment due process rights.  He names as defendants

21  eleven prison officials and correctional officers, in their official and individual capacities, only

22  five of whom appear to have been served.  The Motion is brought on behalf of those five:

23  Villa, Aguayo-Hunt, Grannis, Baltazar, and Jimenez, Jr. (collectively "Defendants").  The

24  court deems only the moving defendants to be parties to this action.[2]

25

26  ────────────────

27       [1]  Both the Motion and the Opposition are docketed as a "motions."

28       [2]  *See* Docket Nos. 11 through 15, Summonses for G. Saenz, S. Ryan, W.C. Robert, M.E.
    Bourland, and M.E. Ruan, all noted returned "Unexecuted" in March 2007 for the reasons described
    in the documents.  Accordingly, disposition of this motion disposes of the entire case.

1    Magistrate Judge William McCurine, Jr. prepared a Report And Recommendation
2  ("R&R") recommending Defendants' Motion be granted in part and denied in part, and that
3  Deadmon be granted leave to amend all but his official capacity allegations and one
4  conspiracy to violate civil rights claim.  Dkt No. 27.  Deadmon filed no Objections to the R&R.
5    Defendants filed Objections to a single aspect of the R&R:  the recommendation the
6  42 U.S.C. § 1983 conspiracy claim be found to survive their FED. R. CIV. P. 12(b)(6)
7  challenge.  Deadmon filed no response to Defendants' Objections.  Defendants argue no
8  conspiracy to violate civil rights cause of action can be maintained in the absence of a viable
9  underlying substantive civil rights violation claim, and the R&R recommends dismissal of all
10  the Due Process claims.  Dkt No. 28.  However, as the R&R also recommends granting
11  Deadmon leave to amend, this court construes the recommendation as predicated on the
12  assumption Deadmon would file an amended pleading restating a viable Due Process
13  violation claim that could support the conspiracy claim.  Nevertheless, for the reasons
14  discussed below, Defendants' Objections are **SUSTAINED** on grounds Deadmon will not be
15  granted leave to restate a third time any of his claims.  The R&R is **ADOPTED IN PART**, but
16  on modified reasoning, and **REJECTED IN PART**.

17  **I.    BACKGROUND**

18    In June 2005, prison officials charged Deadmon with conspiracy to assault peace
19  officers while he was an inmate at Calipatria State Prison.[3]  He was ultimately found not
20  guilty of that charge through institutional review procedures, but he spent fifteen months in
21  administrative segregation ("Ad Seg") in the meantime.  His First Amended Complaint
22  ("FAC") alleges Defendants, in their official and individual capacities, violated his procedural
23  due process rights associated with the instigation, investigation, and conduct of his
24  disciplinary proceedings by forging, falsifying, and back-dating documents, failing to disclose
25  exculpatory evidence, and failing to investigate his claims of misconduct during his
26  administrative appeal.  He also summarily contends the deprivations associated with his Ad
27  Seg confinement caused him "mental, emotional, and physical suffering."  FAC ¶ 103.

28  _____

    [3]  Neither Deadmon nor Defendants describe his underlying conviction or sentence.

1    Deadmon seeks declaratory relief, but with the import of injunctive relief,[4] and

2    compensatory damages. His FAC separately identifies two causes of action:  First, a

3    violation of Due Process; and Second, infliction of mental, emotional, and physical suffering,

4    including his fear of the potential he will be seen "in a negative light before the Board of

5    Prison Terms, and possibly cause plaintiff to be denied for a period of five years."  FAC

6    15:22-17:2.  Defendants liberally construe the FAC to identify three due process violation

7    claims, a "mental anguish" claim and, although not separately enumerated as a cause of

8    action, a claim for conspiracy to violate Deadmon's due process rights by three of the five

9    named defendants.  Mot. 5:2-10. The R&R enumerates four claims discernable from the

10   allegations in Deadmon's 17-page FAC, addressing:  a "first claim" based on "an alleged

11   violation of his rights to due process of law in how his disciplinary hearing was held," citing

12   FAC ¶ 101;  a "second claim" based on "an alleged violation of his rights to due process of

13   law based upon the length of his confinement in Ad Seg;" a "third claim" as "an alleged

14   violation of his rights to due process based upon the possibility that his eligibility for parole

15   may be effected [*sic*]" (although this court construes that portion of the pleading instead as

16   a speculative concern related to damages as part of his "mental anguish" allegations,

17   appearing as it does in the statement of his second cause of action); and fourth, the second

18   of Deadmon's two causes of action enumerated in his FAC, alleging emotional, mental, and

19   physical suffering, citing FAC ¶¶103-104.  R&R 3:3-8.  The R&R additionally addresses his

20   conspiracy allegations as a separate claim.

21        Deadmon's Opposition to the Motion accepts Defendants' introductory statement and

22   the material portions of their procedural and factual background statements.  Dkt No. 25,

23   p. 3.  No party filed objections to the factual or procedural summaries provided in the R&R.

24   \\

25   \\

26

27        [4]  For example, in his prayer for relief, Deadmon asks the court to "declare":  documents
     associated with the disciplinary proceedings giving rise to his claims be removed from his file; a
28   written notice be placed in his file with instructions that the Board of Prison Terms disregard any
     documents that may refer to the conspiracy charge against him; and Defendants be removed from
     their positions or have letters of reprimand issued against them.  FAC pp. 15-16.

1    **II.    DISCUSSION**

2        **A.    Legal Standards**

3            **1.    Motions To Dismiss For Failure To State A Claim**

4    A FED. R. CIV. P. ("Rule") 12(b)(6) motion to dismiss tests the sufficiency of the

5    complaint.  Dismissal is warranted where the complaint lacks a cognizable legal theory.

6    Robertson v. Dean Witter Reynolds, Inc.,749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v.

7    Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on

8    the basis of a dispositive issue of law").  A complaint may also be dismissed where it

9    presents a cognizable legal theory, but fails to plead facts essential to the statement of a

10   claim under that theory.  Robertson, 749 F.2d at 534; see Balistreri v. Pacifica Police Dept.,

11   901 F.2d 696, 699 (9th Cir. 1988).  Leave to amend "shall be freely given when justice so

12   requires." Rule 15(a); see DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir.

13   1992) (when a Rule 12(b)(6) motion is granted, leave to amend is ordinarily denied only

14   when it is clear that the deficiencies of the complaint cannot be cured by amendment);

15   Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623-24 (9th Cir. 1988) (in civil

16   rights cases, courts must liberally construe the pleadings and resolve doubts in favor of the

17   plaintiff, and "[a] pro se litigant must be given leave to amend his or her complaint unless it

18   is 'absolutely clear that the deficiencies of the complaint could not be cured by

19   amendment'"); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

20               While a complaint attacked by a Rule 12(b)(6) motion to dismiss
                 does not need detailed factual allegations; . . . a plaintiff's
21               obligation to provide "grounds" of his "entitle[ment] to relief"
                 requires more than labels and conclusions, and a formulaic
22               recitation of the elements of a cause of action will not do. . . .
                 Factual allegations must be enough to raise a right to relief
23               above the speculative level . . . .

24   Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1964 (May 21, 2007), quoting

25   Conley v. Gibson, 355 U.S. 41, 47 (1957).[5]

26   _____

27       [5]    Conley's "no set of facts" language "has earned its retirement. The phrase is best
     forgotten as an incomplete, negative gloss on an accepted pleading standard:  once a claim has
28   been stated adequately, it may be supported by showing any set of facts consistent with the
     allegations in the complaint." Bell Atlantic, 127 S.Ct. at 1969. "**It is not . . . proper to assume that
     [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the**

The Rule 12(b)(6) issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Scheuer v. Rhoades, 416 U.S. 232, 236 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 457 U.S. 800 (1982). The court assumes the truth of all factual allegations, including all reasonable inferences to be drawn from the facts alleged, and construes them in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations, nor need the court accept conclusory allegations or unreasonable inferences as true. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). In construing the pleading, courts may not "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss"); *see also* Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1997) (a plaintiff must support allegations of civil rights violations with factual allegations of overt acts or omissions with some degree of particularity).

A sufficiency of the pleading review is confined to the complaint. Schneider v. California Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). However, the court may also consider documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. Branch v. Tunnell, 14 F.3d 449, 454-55 (9th Cir. 1994), *overruled on other grounds by* Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

## 2.   42 U.S.C. § 1983 Actions

Deadmon seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides, in pertinent part:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof

---

**[laws] in ways that have not been alleged**." Id. at 1969 n.8 (emphasis added) (citation omitted).

to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  Accordingly, to sustain a Section 1983 action, the allegations must show (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a constitutional right.  *See* Balistreri, 901 F.2d at 699; West v. Atkins, 487 U.S. 42, 48 (1988).

### 3.  Cognizable Due Process Violations

The Fourteenth Amendment provides that no state shall deprive a person of life, liberty, or property without due process of law.  The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake.  Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving the state's deprivation of an individual's liberty, but only when there is a cognizable liberty interest at stake); *see* Ingraham v. Wright, 430 U.S. 651, 672 (1977).  Protectable liberty interests arise from the Fourteenth Amendment's Due Process Clause itself, or from state laws or regulations deemed to have created a liberty interest cognizable as a civil right. Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Wolff v McDonnell, 418 U.S. 539, 557-58 (1974) (describing minimum safeguards before a state, for disciplinary reasons, seeks to withdraw sentence credits a prisoner has already acquired, raising a liberty interest); Smith v. Sumner, 994 F.2d 1401, 1405-06 (9th Cir. 1993).

### 4.  R&R Review

A district judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes.  Rule 72(b); *see* 28 U.S.C. § 636(b)(1).  An objecting party may "serve and file specific objections to the proposed findings and recommendations," and "a party may respond to another party's objections."  Rule 72(b).

\\

1    "[T]he court shall make a *de novo* determination of those portions of the report or

2    specified proposed findings or recommendations to which objection is made." 28 U.S.C.

3    §636(b)(1); <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980) (when objections are made,

4    the court must make a *de novo* determination of the factual findings to which there are

5    objections).   The court also reviews *de novo* the magistrate judge's conclusions of law.

6    <u>Gates v. Gomez</u>, 60 F.3d 525, 530 (9th Cir. 1995).   "If neither party contests the magistrate's

7    proposed findings of fact, the court may assume their correctness and decide the motion on

8    the applicable law."   <u>Orand v. United States</u>, 602 F.2d 207, 208 (9th Cir. 1979).   The

9    statutory provision does not require that the district court conduct some lesser review when

10   no objections are filed.   <u>Thomas v. Arn</u>, 474 U.S. 140, 150 (1985) ("It does not appear that

11   Congress intended to require district court review of a magistrate's factual or legal

12   conclusions under a *de novo* or any other standard when neither party objects to those

13   findings"); *but see* <u>Robbins v. Carey</u>, 481 F.3d 1143, 1146-47 (9th Cir. 2007)

14   ("determinations of law by the magistrate judge are reviewed *de novo* by both the district

15   court and [the court of appeals]," so "the failure to object would not, standing alone, ordinarily

16   constitute a waiver of the issue" on appeal) (citation omitted).   Here, the court need only

17   address the conclusions of law and decide the ultimate disposition of Defendants' Motion,

18   as no party has filed objections to the R&R factual findings.

19       **B.    <u>Immunity</u>**

20       Defendants move to dismiss all the FAC "official capacity" allegations against them.

21   The Eleventh Amendment bars suits for damages against a state employee acting in his

22   official capacity as an agent of the State.   <u>Regents of the University of California v. Doe</u>, 519

23   U.S 425, 429 (1997); <u>Dittman v. California</u>, 191 F.3d 1020, 1026 (9th  Cir. 1999).   In his

24   Opposition to dismissal of his official capacity allegations, Deadmon confuses "qualified

25   immunity" with sovereign immunity.[6]  Opp. pp. 4-5.  Officials "sued in their official capacities

26   _____

27       [6]   The Eleventh Amendment confers sovereign immunity, **barring suits** against State
     officials when a damages judgment would be paid by the State.  *See* <u>Hafer v. Melo</u>, 502 U.S. 21, 25
28   (1991); <u>Blaylock v. Schwinden</u>, 862 F.2d 1352, 1354 (9th Cir. 1988).   In contrast, "[t]he affirmative
     defense of qualified immunity shields public officials performing discretionary functions from liability
     for civil damages under § 1983 '**insofar  as** their conduct does not violate clearly established

1   are not 'persons' within the meaning of § 1983," foreclosing any finding of liability in that

2   capacity. <u>Jackson v. Carey</u>, 353 F.3d 750, 758 (9th Cir. 2003), *quoting* <u>Doe v. Lawrence</u>

3   <u>Livermore Nat'l Lab</u>, 131 F.3d 836, 839 (9th Cir. 1997).  The court accordingly finds

4   sovereign immunity bars Deadmon from suing the named Defendants in their official

5   capacities and **ADOPTS** the recommendation that portion of the Motion be **GRANTED**.[7]

6       **C.    Due Process Claims**

7       Defendants and Judge McCurine identify three facets to Deadmon's allegations his

8   Fourteenth Amendment due process rights were violated:  defects in the disciplinary hearing

9   process originating from alleged misconduct in the initiation and prosecution of charges

10  against him; his confinement and conditions in Ad Seg for the 15-month duration; and

11  speculation his parole eligibility may be affected by the disciplinary charges made against

12  him, despite his ultimate exoneration.  This court approaches Deadmon's due process

13  claims from a different perspective than that applied in the R&R.  Only if a cognizable liberty

14  interest has first been implicated need the court reach a procedural due process safeguards

15  analysis.  *See* <u>Wolff</u>, 418 U.S. 539.

16      "The requirements of procedural due process apply only to the deprivation of interests

17  encompassed by the Fourteenth Amendment's protection of liberty and property." <u>Roth</u>, 408

18  U.S. at 569.  Deadmon urges the court to find the fact of his confinement in Ad Seg to be a

19  violation of his "constitutional rights to due process, life, and liberty" because he alleges he

20  "was falsely imprisoned in (AD-AEG) [*sic*] based on [Defendants'] trumped up charges and

21

22  statutory or constitutional rights of which a reasonable person would know.'" <u>May v. Baldwin</u>, 109

23  F.3d 557, 561 (9th Cir. 1997) (emphasis added).

24      [7]   Consequently, defendant Grannis is dismissed as a party to this action, inasmuch as
    Deadmon sues her solely in her official capacity, leaving only Deadmon's claims against the
25  remaining four defendants, in their personal capacities.  Even had Deadmon sued Grannis in her
    individual capacity as well, this court would have  adopted the R&R recommendation the merits of
26  the claim against her be dismissed. Grannis' alleged conduct involved solely acts related to
    endorsing the grievance procedure used by signing the Chief Inmate Appeals Review Final Report
27  of Plaintiff's 602.  R&R 13:17-19, *quoting* Opp. p. 7.  Prisoners have no protected liberty interest in
    a particular grievance procedure. *See* <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988); <u>Sandin</u>
28  <u>v. Connor</u>, 515 U.S. 472, 483-85 (1995).  Denial of a grievance, standing alone, does not state a
    Section 1983 claim.  Defendants also observe Deadmon's complaint arises out of the disciplinary
    proceedings that resulted in his placement in Ad Seg, not from the appeal process. Reply 5:17-19.

falsified documents."  Opp. p. 5.  Changes in a prisoner's conditions of confinement can amount to a deprivation of a liberty interest constitutionally protected under the Due Process Clause, but only if the liberty interest in question is one of real substance.  <u>Sandin v. Connor</u>, 515 U.S. 472, 477-78 (1995).  A prisoner possesses such a liberty interest "when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  <u>Jackson</u>, 353 F.3d at 755, *quoting* <u>Resnick v. Hayes</u>, 213 F.3d 443, 448 (9th Cir. 2000) (*quoting* <u>Sandin</u>, 515 U.S. at 484).  The court's threshold inquiry, accordingly, is whether the conditions of Deadmon's confinement in Ad Seg imposed "atypical and significant hardship" implicating a protected liberty interest.  If so, the court must then determine what process he was due and whether he received it.  *See, e.g.* <u>Wilkinson v. Austin</u>, 545 U.S. 209 (2005) (holding that segregated confinement of indefinite duration in a "supermax" prison that rendered inmates ineligible for parole consideration created a combination of factors that implicated a liberty interest, but the state's informal, nonadversary procedures for placement there were adequate to safeguard inmates' liberty interest in not being assigned to supermax prison).  Only in those cases where a sufficiently substantial liberty interest is at stake must the court evaluate whether the process received comported with minimum procedural due process requirements.  If the court answers the first question in the negative, the plaintiff has failed to state a Section 1983 claim for a Fourteenth Amendment violation.

### 1.      **Administrative Segregation**

The Due Process Clause itself does not confer on inmates a liberty interest in remaining housed in the general prison population.  <u>Smith v. Noonan</u>, 992 F.2d 987, 989 (9th Cir. 1993); <u>McFarland v. Cassady</u>, 779 F.2d 1426, 1427-28 (9th Cir. 1986) (no liberty interest in remaining in the general prison population rather than in administrative confinement while information alleging misconduct affecting institutional security was investigated); <u>Clark v. Brewer</u>, 776 F.2d 226, 228-30 (8th Cir. 1985) (Due Process Clause did not create a liberty interest, notwithstanding the fact that conditions in "close management" were significantly more harsh than conditions in the general prison population).

1    In order to find a liberty interest conferred by state law, the analysis focuses on the

2   nature of the deprivation rather than on the language of any particular regulation, to avoid

3   involvement of federal courts in day-to-day prison management.[8]  *See* Sandin, 515 U.S. at

4   479-82; *see also* May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997) (convicted inmate's due

5   process claim fails because he has no liberty interest in freedom from state action taken

6   within sentence imposed, and administrative segregation falls within the terms of

7   confinement ordinarily contemplated by a sentence).  Cognizable liberty interests created

8   by state law are limited to freedom from restraint which "imposes atypical and significant

9   hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S.

10   at 484 (rejecting prior test of Hewitt v. Helms, 459 U.S. 460 (1983) focusing on the

11   mandatory or discretionary language of a regulation to identify whether it created a liberty

12   interest); *see* Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

13    "There is no single standard for determining whether a prison hardship is atypical and

14   significant, and the 'condition or combination of conditions or factors  . . . requires case by

15   case, fact by fact considerations.'" Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003),[9]

16   *quoting* Keenan, 83 F.3d at 1089; *see* Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.2000)

17   (plaintiff's placement and retention in prison's special housing unit pending a disciplinary

18   hearing was within range of confinement normally expected by inmates in relation to ordinary

19   incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free

20   from that confinement).  The Sandin Court structured the "atypical and significant hardship"

21

22    [8]   Deadmon's FAC cites three California Administrative Code sections he presumably relies
on for the liberty interest element essential to sustain a Section 1983 civil rights claim associated with

23   his challenged Ad Seg confinement.  FAC ¶¶ 50-53.  Title 15, § 3321 addresses the "confidential"
classification of information to be withheld from an inmate and the uses that may be made of such

24   information.  Title 15, § 3330 addresses the manner of assignment of inmates to disciplinary
detention.  Title 15, § 3335 addresses the reasons for and review of administrative segregation of

25   inmates whose "presence in an institution's general inmate population presents an immediate threat
to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an

26   investigation of an alleged serious misconduct or criminal activity. . . ."  Title 15, § 3335(a).

27    [9]   The Ramirez court remanded the case to the district court for failure to consider whether
the multiple conditions of the prisoner's confinement in disciplinary segregation imposed an atypical

28   and significant hardship warranting additional Due Process protections during his hearing, but noting
his segregation for a period of two years was not necessarily a due process violation.  Ramirez, 334
F.3d at 861, *citing* Keenan, 83 F.3d at 1089.

inquiry. "The Court in <u>Sandin</u> relied on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation:   (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no 'major disruption in his environment'; and (3) the length of the plaintiff's sentence was not affected." <u>Jackson</u>, 353 F.3d at 755, *quoting* <u>Resnick v. Hayes</u>, 213 F.3d 443, 448 (9th Cir. 2000) (*quoting* <u>Sandin</u>, 515 U.S. at 486-87); *see also* <u>Keenan</u>, 83 F.3d at 1089 (the <u>Sandin</u> guideposts are: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody;" (2) the duration of the conditions and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence).   The appropriate comparison under the first consideration is conditions of administrative segregation compared to conditions of other segregation. *See, e.g.*, <u>Wagner v. Hanks</u>, 128 F.3d 1173, 1174 (7th Cir. 1997); <u>Jackson</u>, 353 F.3d at 755 ("<u>Sandin</u> requires a factual comparison between conditions in general populations or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner").   Deadmon does not allege his Ad Seg detention entailed significant (or any) departures from restrictions imposed on any other inmate transferred to segregated confinement, whether for administrative or protective or disciplinary reasons.

The FAC only compares Deadmon's Ad Seg conditions of confinement to those in the general prison population.  He identifies the following hardships he experienced in Ad Seg: deprivation of personal property; family visits behind a closed window; denial of "the normal everyday function of the general population;" only allowed one package a year; no phone calls; maximum ten hours per week of yard time; and one shower every three days.  FAC ¶ 97.  Defendants contend no liberty interest is created by virtue of Deadmon's having been placed in segregated housing with charges affecting prison security pending against him, nor because of the duration of that confinement, nor based on "the attendant restrictions

Deadmon enumerates in the FAC" (Mot. 10:1-4) because he was not made to suffer "an atypical and significant hardship in light of the ordinary incidents of his incarceration" (Mot. 9:1-2). Defendants argue "[a]ny difference in the conditions simply qualify as permissible disciplinary action as sanctioned by the Supreme Court in Sandin: 'Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by the court of law.'" Mot. 9:2-5, *quoting* Sandin, 515 U.S. at 485.

The Supreme Court has identified few protected liberty interests within the prison context requiring procedural due process protections. *See* Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (the "healthy procedural protections" under the Due Process Clause in the prison context discussed in Wolff, 418 U.S. at 564-71, when an inmate is charged with a disciplinary infraction, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected ma[nn]er'" or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'"), *quoting* Sandin, 515 U.S. at 484. As noted in the R&R, "extreme deprivations are required to make out a conditions-of-confinement claim." R&R 11:26-27, *quoting* LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (internal citations omitted) (holding none of the practices in a disciplinary segregation unit challenged under the Eighth Amendment (involving more restrictive and restraining conditions than Deadmon complains of here) was unnecessary or caused harm rising to the level of a constitutional violation).

Deadmon concedes that a prison "inmate should reasonably anticipate receiving at some point in their incarceration administrative segregation confinement." Opp. p. 5, *citing* Hewitt, 459 U.S. at 467. His argument that he was eventually cleared of the disciplinary allegations and released from Ad Seg cannot support the contention he never should have been placed there, because one need not be a wrongdoer in fact to warrant placement in Ad Seg during an investigation.[10] "A prisoner has no constitutionally guaranteed immunity

---

[10]   Defendants argue that even assuming the truth of Deadmon's allegations official misconduct occurred in the bringing of the disciplinary charges against him, "any defect that may have occurred during the first disciplinary hearing was cured when Plaintiff was ultimately found not guilty at the second hearing." Reply 3:24-26, *citing* FAC ¶ 96; Wycoff v. Nichols, 94 F.3d 1187, 1189 (8th Cir. 1996) (reversal of prison disciplinary committee's initial decision to sanction inmate

1  from being wrongly or falsely accused of conduct which may result in the deprivation of a

2  protected liberty interest." Lopez v. Celaya, 2008 WL 205256 at *5 (N.D.Cal. Jan. 23, 2008),

3  citing, inter alia, Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989).

4      None of the conditions or deprivations Deadmon alleges suggests "a dramatic

5  departure from accepted standards for conditions of confinement." Overton v. Bazzetta, 539

6  U.S. 126, 136-37 (2003) (upholding prison regulations banning visitation privileges entirely

7  for a two-year period for inmates with two substance abuse violations and regulating the

8  conditions of visitations by others as not affecting constitutional rights that survive

9  incarceration), citing Sandin, 515 U.S. at 485; see also Davenport v. DeRobertis, 844 F.2d

10  1310, 1316 (7th Cir. 1988) (no constitutional right implicated by restricting inmate to one

11  shower per week). "[T]he length of confinement cannot be ignored in deciding whether the

12  confinement meets constitutional standards." Hutto v. Finney, 437 U.S. 678, 686-87 (1979)

13  (noting a "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and

14  intolerably cruel for a few weeks or months"). However, duration alone does not create a

15  liberty interest violation.[11] The Sandin articulation of that consideration speaks in terms of

16  "degree of restraint" imposed during the confinement period.[12] Sandin, 515 U.S. at 486-87.

17  _____

18  constituted due process and cured alleged due process violation; also holding inmate did not have
    a protected liberty interest in avoiding administrative segregation because those conditions were not
19  atypical nor a significant departure from basic conditions of prisoner's confinement). However, such
    a categorical exoneration of official misconduct based on ultimate vindication of the prisoner's
20  grievances cannot foreclose a properly-pled and supported claim of constitutional rights violations.
    For example, applying Sandin, an atypical hardship while in Ad Seg supports a cognizable
21  constitutional claim, irrespective of whether the prisoner ultimately prevailed at a grievance hearing.

22      [11]  The R&R traces the timeline of Deadmon's disciplinary proceedings to demonstrate he
    received sufficient procedural due process associated with his pursuit of grievance procedures, even
23  though the R&R accounts only for the period from his June 8, 2005 receipt of an Administrative
    Segregation Unit Placement Notice through an October 12, 2005 issuance of a new Rules Violation
24  Report and grant of a rehearing. R&R 9:1-10:10. While that analysis does not cover the entire
    period of Deadmon's Ad Seg confinement of which he complains, the FAC and associated exhibits
25  substantiates a third accusatory document issued (FAC ¶ 37) following which he was permitted to
    present evidence at a hearing. In November 2005 and February 2006, Deadmon's appeals were
26  denied, accounting for his continued detention. FAC ¶¶ 46-47.

27      [12]  "Prisoners...of course, retain other protection from arbitrary state action even within the
    expected conditions of confinement. They may invoke the First and Eighth Amendments and the
28  Equal Protection clause of the Fourteenth Amendment where appropriate, and may draw upon
    internal prison grievance procedures and state judicial review where appropriate." Sandin, 515 U.S.

1 Deadmon remained in Ad Seg pending resolution of the on-going investigation of disciplinary
2 charges and his appeals, with regular reviews and communication between him and prison
3 administration authorities.[13]   The court finds the FAC does not allege the type of "atypical
4 and significant hardship" necessary to support a cognizable Due Process interest protected
5 by the Fourteenth Amendment itself or created by state law.  *See* <u>Toussaint v. McCarthy</u>,
6 801 F.2d 1080,1093-94 (9th Cir. 1986).

7                    **2.    <u>Alleged Irregularities In Discipline Charges And Hearing Process</u>**

8           Defendants acknowledge the "Fourteenth Amendment's Due Process clause entitles
9 prisoners to certain due process protections when charged with disciplinary violations,"
10 including "the rights to call witnesses, to present evidence, and to have a written statement
11 of the evidence relied upon and the reasons for the disciplinary action taken."  Mot. 13:5-8,
12 *citing* <u>Wolff</u>, 418 U.S. at 564-71.  However, unless a plaintiff identifies the existence of a
13 protected liberty interest to be free from Ad Seg confinement or from the particular
14 restrictions placed on him while there, the prisoner may not pursue a claim based on denial
15 of procedural due process resulting in that confinement or those deprivations.   Mere
16 placement in Ad Seg, with its attendant additional restrictions, pending investigation of
17 disciplinary charges does not implicate a protected liberty interest after <u>Sandin</u>, absent a
18 showing the conditions of confinement created "atypical and significant hardship" in relation
19 "to the ordinary incidents of prison life."  <u>Resnick</u>, 213 F.3d at 448-49.   The manner of the
20 deprivation complained of is not reviewable as a Due Process violation if the deprivation
21 itself does not entail infringement of a liberty interest.  *See, e.g.,*  <u>May</u>, 109 F.3d at 565.

22                         Plaintiff's allegations regarding his placement into administrative
                         segregation based on allegedly false information suggests a due
23                         process claim. However, the claim is not cognizable. Absent

24 _____

25 at 487 n.11. The conditions Deadmon describes appear to this court to be insufficient to qualify as
26 either potential Eighth Amendment violations (which Deadmon does not allege) or to constitute an
atypical, significant hardship cognizable as a Due Process violation under a deprivation of liberty
standard.

27       [13]  Deadmon's is not a case where he was placed in Ad Seg indefinitely or without a hearing
28 or without any meaningful review of his confinement.  *See* <u>Hewitt</u>, 459 U.S. at 477 n.9 (to justify
continued confinement in Ad Seg, prison officials must conduct periodic administrative reviews to
determine whether further confinement is warranted); *see also* <u>Toussaint</u>, 926 F.2d at 803.

1
2
3
4
5
6
7

> allegations that placement in segregated housing is, itself, outside the range of confinement contemplated by the sentence, a claim that placement in segregated housing pending investigation of disciplinary charges violates due process fails as a matter of law. There is no protected liberty interest in not being confined in the security housing unit where placement and retention therein were "within the range of confinement to be normally expected" by prison inmates. <u>Resnick v. Hayes</u>, 213 F.3d 443, 448-49 (9th Cir.2000); <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir.1997) (a prisoner has no protected interest in freedom from administrative segregation). Thus, as to this claim, plaintiff's motion for summary judgment must be denied and the claim must be dismissed for failure to state a cognizable claim.

8  <u>Smith v. King</u>, 2007 WL 405030 (E.D. Cal. Feb.2, 2007) at *3.

9   As a consequence of this court's finding the FAC fails to allege facts to support the

10  inference a cognizable liberty interest attached to Deadmon's Ad Seg confinement, the

11  allegations challenging the process leading to or perpetuating that confinement are

12  immaterial to Defendant's entitlement to Rule 12(b)(6) dismissal.  Unless application of the

13  <u>Sandin</u> test identifies a cognizable liberty interest at stake, the court need not reach the <u>Wolff</u>

14  analysis of the *manner* in which a plaintiff alleges his due process rights were violated.

15   Even if a liberty interest could be found from the deprivations or duration of

16  Deadmon's Ad Seg confinement, his FAC allegations do not support a claim for procedural

17  due process violations.  "[A prison] grievance procedure is a procedural right only, it does

18  not confer any substantive right upon the inmates." <u>Buckley v. Barlow</u>, 997 F.2d 494, 495

19  (8th Cir. 1993) (failure to process any of plaintiff's grievances without more is not actionable

20  under Section 1983); *see* <u>Ramirez</u>, 334 F.3d at 860; <u>Toussaint</u>, 801 F.2d at 1093-94 ("[d]ue

21  process, in the administrative context, merely requires that the prison officials provide the

22  inmate with 'some notice of the charges against him and an opportunity to present [the

23  inmate's] version to the prison official charged with deciding whether to transfer [the inmate]

24  to administrative segregation'") (citation omitted).   Reviewing the FAC, the Motion

25  contentions and authority, Deadmon's Opposition, and the R&R analyses of the procedural

26  due process issues, this court concludes Deadmon received all the process to which he was

27  entitled.   A prisoner must be informed of the reasons for his Ad Seg placement through a

28  CDC written form.  He must receive periodic reviews after placement in Ad Seg.  When the

1  prisoner receives notice and a review process associated with his placement in Ad Seg, the

2  prisoner has received all the process to which he is entitled for that confinement.  Toussaint,

3  801 F.2d at 1100-01 (federal due process does not require that plaintiff be provided with

4  "detailed written notice of charges" or "a written decision describing the reasons for placing

5  the prisoner in administrative segregation" or "the disclosure of the identity of any person

6  providing information leading to the placement of a prisoner in administrative segregation").

7  The process due in proceedings subsequent to a criminal conviction and sentencing is less

8  demanding than before the finding of a defendant's guilt.  Deadmon mistakenly attempts to

9  equate prison disciplinary proceedings with the process owed to accuseds associated with

10  criminal trials and convictions, relying on distinguishable cases.[14]  Opp. pp. 5-6.  "Prison

11  disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights

12  due a defendant in such proceedings does not apply."  Wolff, 418 U.S. at 556.

13        Deadmon also argues the process is constitutionally "insufficient when it has been

14  contaminated by the introduction through state action of false inculpatory evidence,"

15  contending "the introduction  itself violates the Due Process Clause."  Opp. p. 5.   While in

16  no way condoning "trumped up charges" or the use of "falsified documents" in any official

17  proceeding, even the filing of false disciplinary charges is not itself a due process violation,

18  provided the procedural due process requirements of Wolff are observed.  *See* Hanrahan

19  v. Lane, 747 F.2d 1137 (7th Cir. 1984) (inmate's complaint alleging prison guard planted

20  false evidence and issued disciplinary ticket in retaliation for failure to pay extortion demand

21  resulting in his loss of good time credits failed to state a claim upon which Section 1983 relief

22

23        [14]   For example, Deadmon cites Napue v. Illinois, 360 U.S. 264 (1959) for the proposition:
"Court[s] have repeatedly recognized that **a conviction** obtained through the knowing use of false

24  evidence is fundamentally unfair and violative of due process."  Opp. p. 6 (emphasis added).  The
Napue Court reviewed and reversed the denial of a petition by a defendant who had been convicted

25  of murder based on false trial testimony from a State witness.  **Criminal convictions** obtained
through false testimony known to be false by State representatives violate due process for reasons

26  wholly distinguishable from testimonial irregularities in post-conviction prison disciplinary proceedings
not affecting the fact of a criminal conviction nor the duration of a sentence.  Deadmon also relies

27  on Mooney v. Holohan, 294 U.S. 103 (1935), a habeas corpus case again challenging the underlying
conviction resulting in the petitioner's alleged unconstitutional imprisonment through the prosecution's

28  deliberate use of allegedly perjured trial testimony. *See*  FAC pp. 8-9.  Deadmon's case is a Section
1983 prisoner civil rights action challenging state action unrelated to his conviction and not affecting
his criminal sentence, involving different standards and remedies.

could be granted where procedural due process protections were provided, although failure to give inmate a statement of the evidence against him relied on in an investigation and disciplinary adjudication process resulting in a determination of his guilt of the infraction stated a claim); *see also* Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) (prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," but prisoners have "the right not to be deprived of a protected liberty interest without due process of law").

Nevertheless, an inmate can state a cognizable claim for violation of his federal constitutional rights associated with an allegedly false disciplinary report, or a conviction based on an allegedly false disciplinary, report in two ways.  First, an inmate can allege the false report or false conviction was retaliatory.  *See* Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997) (jury finding that prison guard filed disciplinary report in retaliation for inmate's use of grievance system upheld).  The statement of such a claim requires pleading the defendant "filed the disciplinary action against him in retaliation for the inmate's exercise of his constitutional rights and that the retaliatory action advanced no legitimate penological interest."  Id. at 267.  Deadmon's FAC allegations do not permit the inference the allegedly false report or charges against him were retaliatory.  He alleges only that the charges were false and allegedly made with knowledge of their falsity.

Second, an inmate can allege he was not afforded the procedural protections required by the Due Process Clause in connection with the issuance and hearing of the disciplinary report.  *See, e.g.,* Black v. Lane, 22 F.3d 1395, 1401-02 (7th Cir. 1994).  A procedural due process claim arising out of a false disciplinary report, however, fails if the inmate received particular protections.  *See, e.g.,* Freeman v. Rideout, 808 F.2d 949 (2nd Cir. 1986).  Those protections are:  (1) written notice of the charges at least 24-hours before the hearing; (2) the opportunity to appear in person at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders of the evidence relied on for their decision and the reasons for the action taken by the committee.  Wolff, 418 U.S. at 564-66. "Although prisoners are entitled to be free from arbitrary action and conduct of prison

1   officials, the protections against arbitrary action 'are the procedural due process
2   requirements as set for in Wolff v. McDonnell.'"[15] Freeman, 808 F.2d at 952, *quoting*
3   Hanrahan, 747 F.2d at 1140.  Due process is satisfied if there is any evidence in the record
4   that could support the conclusion reached by the officials to place the inmate in Ad Seg.
5   Toussaint, 801 F.2d at 1104-05; *see also* Hill, 472 U.S. at 455 (even where the punishment
6   is the loss of good time credits, the requirements of due process are satisfied if there is even
7   "some evidence" to support the prison's disciplinary decision).  Deadmon's allegations and
8   complaint exhibits demonstrate there was "some evidence in the record that could support
9   the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455
10  (1985).  He appears from the FAC and complaint exhibits to have received all process due
11  him, and he fails to state a claim under either pleading standard based on allegedly false
12  disciplinary reports.[16]

13      In summary, the court finds Deadmon has not stated his claims in a manner
14  permitting the court to find he had a liberty interest in remaining free from Ad Seg, or from
15  any of the conditions of his confinement there of which he complains, and therefore he has
16  not stated a Fourteenth Amendment cause of action cognizable under Section 1983.  Absent
17  a liberty interest, he was not entitled to any procedural due process protections associated
18  with the deprivations he complains of.[17]  The *consequence* he complains of associated with

19

20      [15]  "[A]n allegation that a prison guard planted false evidence which implicates an inmate in
21  a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due
    process protections as required by Wolff v. McDonnell are provided." Freeman, 808 F.2d at 952,
22  *quoting* Hanrahan, 747 F.2d at 1140.  The FAC alleges Deadmon was provided hearings, assistance
    of investigators, written notice of the charges asserted in the institutional write-ups against him,
23  rehearing based on unavailability of witness, and appeal processes, among other things.

24      [16]  In particular, Deadmon was placed in Ad Seg and retained there until the administrative
    proceedings and appeals concluded with his ultimate exoneration of those charges on the basis of
25  evidence in sworn reports he had conspired with others to harm prisoner officials.  He was provided
    notice of the charges and permitted the opportunity to rebut them through hearing processes,
26  precluding any finding of a *per se* constitutional violation actionable under Section 1983. Defendants'
    disciplinary infraction charges standing alone were not the cause of his Ad Seg confinement.

27      [17]  When prison officials initially determine whether a prisoner is to be segregated for
28  administrative reasons *and* a liberty interest of real substance is implicated, due process requires
    they hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated,
    inform the prisoner of the charges against him or the reasons segregation is being considered, and

1   the allegedly tainted proceedings – that is, confinement in Ad Seg under the conditions he

2   alleges – fails to implicate a protected liberty interest, foreclosing any cognizable claim of

3   procedural due process violations.  Even reaching Deadmon's allegations he was denied

4   procedural due process, the pleading demonstrates the process he received satisfies the

5   Wolff criteria as a matter of law.[18]  *See* FAC ¶¶ 10, 22-47.  For all the foregoing reasons, the

6   court **ADOPTS** the recommendation Defendants' Motion be **GRANTED**, but on modified

7   reasoning and, because the court also finds leave to amend would be futile, the court

8   **REJECTS** the recommendation leave to amend be granted.

9   ### 3.   Potential Parole Eligibility Consequences

10   Deadmon offers only bare speculation the fact or length of his Ad Seg confinement

11   may affect his parole eligibility.  The FAC fails to state a Section 1983 claim on this inchoate

12   consequences theory.  He was ultimately found not guilty of the original disciplinary infraction

13   charges, he lost no good-time credits associated with the incident,[19] and the overall length

14   of his sentence appears to be unaffected.  *See* Sandin, 515 U.S. at 486-87; *see also*

15   Jackson, 353 F.3d at 755.

16   > As the Court noted in Sandin, "[t]he decision to release a prisoner rests on a myriad of considerations," and an inmate is
17   > generally "afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct
18   > record."  515 U.S. at 487.  The Court in Sandin held "[t]he chance that a finding of misconduct will alter the balance is
19   > simply too attenuated to invoke the procedural guaranties of the Due Process Clause.  Id.

20

21   _____

22   allow the prisoner to present his views. Toussaint, 801 F.2d at 1100.

23   [18]   "Further, even if plaintiff had alleged facts sufficient to establish the existence of a liberty interest in remaining free from Ad-Seg, plaintiff has not alleged facts sufficient to support his claim

24   he was deprived of the procedural due process protections he was due. In matters of internal security, courts have accorded great deference to the decisions of prison administrators. A lesser quantum of process is due a state prisoner placed in segregation for administrative reasons, Hewitt,

25   459 U.S. at 474, than is required to punish a prisoner for a disciplinary infraction, Wolff, 418 U.S. 539 . . . . An inmate must merely receive some notice of the charges against him and an opportunity to

26   present his views to the prison official charged with deciding whether to transfer him to administrative segregation. So long as this occurs, and the decision maker reviews the charges and then-available

27   evidence against the prisoner, the Due Process Clause is satisfied." Richardson v. Bryant, 2007 WL 452427 (E.D.Cal. Dec. 19, 2007); *see also*, Toussaint, 801 F.2d at 1101.

28   [19]   His Complaint expressly stated "there is no credit forfeiture under dispute." Compl. ¶ 10.

1  Burnsworth v. Gunderson, 179 F.3d 771, 774 (9th Cir. 1999) (holding, *inter alia*, the

2  possibility of denial of parole at some later date as a result of a prisoner's misconduct record

3  does not amount to a denial of a liberty interest triggering procedural due process

4  protections).   The court **ADOPTS** the R&R recommendation Defendants' Motion be

5  **GRANTED** with respect to the parole eligibility facet of Deadmon's due process claim for

6  failure to demonstrate any liberty interest is implicated.

7         **D.     Conspiracy Allegations**

8         Although Deadmon identifies no separate cause of action for Conspiracy, Defendants

9  extract from his FAC allegations regarding the conduct of defendants Jimenez, Villa, and

10  Hunt an attempt to state a cause of action for conspiracy to violate his due process rights.[20]

11  Defendants move to dismiss any conspiracy claim on grounds his FAC states no underlying

12  due process violation, and he fails to allege they had any discriminatory animus or subjective

13  intent to violate his civil rights.   Mot. 10:20-23, Reply 4:22-25.   In Opposition, Deadmon

14  merely refers to his Complaint Exhibit C.[21]

15         A plaintiff can state a conspiracy to violate civil rights claim under either 42 U.S.C.

16  § 1983 or 42 U.S.C. § 1985.   Klingele v. Eikenberry, 849 F.2d 409, 413 (9th Cir.1988).   In

17  the Ninth Circuit, a cognizable conspiracy claim under Section 1985(3) requires the pleading

18  of factual allegations that could support a finding the alleged conspirators' actions were

19  motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory

20  animus." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted)

21  (also observing civil rights statutes prohibiting conspiracies to deprive persons of their legally

22  protected rights are not to be construed as general federal tort law).

23  _____

24         [20]   Conspiracy claims are distinguishable from retaliation claims.   Prisoners may base
    Section 1983  retaliation claims on harms that would not raise due process concerns.  Resnick, 213

25  F.3d at 448.  To prevail on a Section 1983 claim of retaliation, the prisoner must show the defendant
    was motivated to punish **based on plaintiff's exercise of a Constitutional right**, such as filing

26  prison grievances or pursuing civil rights litigation in the courts implicating the First Amendment.
    *See, e.g.,* Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 806-07

27  (9th Cir. 1995) (Sandin does not affect cases alleging retaliatory transfer or retaliatory discipline).
    No such imputed motivation is stated or can be inferred from Deadmon's FAC allegations.

28         [21]   The FAC was not filed with any attached exhibits.  The court construes the FAC allusions
    to specific exhibits to be references to the exhibits Deadmon filed along with his original Complaint.

1
2
3
4
5
6
7
8

Section 1985 proscribes conspiracies to interfere with an individual's civil rights.  To state a cause of action under Section 1985, a plaintiff must allege:  (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States.  Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir.1980); see also Giffin v. Breckenridge, 403 U.S. 88 (1971). The plaintiff must also demonstrate a deprivation of a right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir.2002); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir.1992).  The "plaintiff must be a member of the class discriminated against." RK Ventures, Inc., 307 F.3d at 1056.

9
10

Pobursky v. Madera County, WL 4557090 (E.D.Cal. Dec. 21, 2007) at *15 (full cites omitted).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The R&R recommends dismissal of Deadmon's conspiracy claim under Section 1985(3) be granted because the "FAC contains no reference to race or any other protected class" (R&R 7:9), and because the court "may not look outside the pleadings in order to determine whether Plaintiff has alleged facts sufficient to show discriminatory animus required to state a § 1985(3) claim" (R&R 7:9-11, citing Rule 12(b)(6)).  Combed carefully, however, Deadmon's FAC actually alludes in two places to race.  He states in passing he concluded from his reading of another inmate's Rules Violation Report, that "other (Blk) inmates were being arrested" (FAC ¶18) and that "staff on the B-Yard" would commonly "plant weapons, forg[e] document, and falsify[] documents on (Blk) inmates on the B-yard" (FAC ¶ 21).  Despite the two parenthetical references to "(Blk)," his 104-paragraph FAC neither identifies Deadmon in racial terms nor develops in any specific claim any defendant acted toward him out of racial animus associated with the disciplinary charges or Ad Seg incident giving rise to this litigation.  He neither cites 42 U.S.C. § 1985(3) nor do his insubstantial allegations permit any reasonable inference he is proceeding under 42 U.S.C. § 1985(3) on a theory Defendants intended to deprive him of equal protection arising from "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action."  Griffin, 403 U.S. at 102-03.  Therefore, this court **ADOPTS** the recommendation to dismiss any 42 U.S.C. § 1985(3) conspiracy claim the FAC might obscurely suggest, on grounds the FAC omits facts essential to a statement of a cause of

1    action under that theory.  Courts may not supply missing elements to save any party's

2    pleading.  Ivey, 673 F.2d at 268; Bell Atlantic, 127 S.Ct. at 1964.

3    The elements of a Section 1983 conspiracy claim do not include a motivating factor

4    of racial or class-based animus.  *See* Dixon, 898 F.2d at 1449 n. 6; Klingele, 849 F.2d at

5    413.  Nevertheless, a Section 1983 conspiracy clam is subject to a higher pleading standard

6    than is set forth in Rule 8(a)(2) and requires the plaintiff assert nonconlusory allegations

7    containing evidence of unlawful intent.  Harris v. Roderick, 126 F.3d 1189, 1195 (9th

8    Cir.1997); *see* Olsen v. Idaho Bd. of Medicine, 363 F.3d 916, 929 (9th Cir.2004) (a plaintiff

9    must plead "specific facts to support the existence of the claimed conspiracy") (citation

10   omitted); *see also* Burns v. County of  King, 883 F.2d 819, 821 (9th Cir. 1989) (a pleading

11   alleging conspiracy must present specific, nonconclusory allegations of subjective intent, a

12   required element of such a claim); Foster v. Skinner, 70 F.3d 1084 (9th Cir. 1995).

13   The R&R recommends Defendants' request for dismissal of a Section 1983

14   conspiracy claim be denied.  Although Defendants object to that recommendation on

15   grounds the R&R finding the FAC states no viable Due Process cause of action precludes

16   survival of any conspiracy to violate due process claim, they do not object to the R&R

17   conclusion the technical pleading of Deadmon's conspiracy claim satisfies the heightened

18   pleading standard required to state a claim for conspiracy.  The court construes the

19   recommendation a Section 1983 conspiracy claim survive Rule 12(b)(6) dismissal in

20   conjunction with the recommendation he be granted leave to amend his pleading, on the

21   assumption he could restate a viable Due Process cause of action in an amended pleading.

22   The heightened pleading standard is satisfied for Rule 12(b)(6) purposes by specific

23   allegations of "which defendants conspired, how they conspired and how the conspiracy led

24   to a deprivation of his constitutional rights . . . " Harris, 126 F.2d at 1196.  This court concurs

25   with the R&R finding "Plaintiff has asserted fairly specific factual claims against the three

26   named defendants," alleging "his due process rights were violated by the manner in which

27   his disciplinary hearing was conducted" with sufficient factual particularity.  R&R 6:8-13.

28   Deadmon identifies by name individual defendants and alleges such specific conduct as

1  falsifying and back-dating disciplinary charges and Rules Violation documents.  This court

2  also concurs with the observation "[i]t is clear Plaintiff has alleged his due process rights

3  were violated *by the manner in which his disciplinary hearing was conducted*," and the claims

4  "do more than offer vague and conclusory allegations of official participation in civil rights

5  violations," satisfying the technical pleading specificity for conspiracy allegations.  R&R 5:26-

6  6:16, *quoting* FAC ¶¶ 56, 73, 76.

7          However, contrary to the R&R finding he has sufficiently pled "official participation in

8  civil rights violations" (R&R 6:5-8), this court finds Deadmon failed to state a claim for an

9  underlying, cognizable liberty interest at stake associated with his Ad Seg confinement or,

10  consequently, any procedural due process violation associated with disciplinary proceedings,

11  as discussed above.  Absent the element of a requisite liberty or property interest

12  deprivation, a plaintiff cannot state an actionable claim under Section 1983 that defendants

13  conspired to deprive him of civil rights.  <u>Woodrum v. Woodward County, Okl.</u>, 866 F.2d 1121,

14  1126-27 (9th Cir. 1989) (a "conspiracy allegation, even if established, does not give rise to

15  liability under section 1983 unless there is an actual deprivation of civil rights").  It is

16  insufficient to plead or prove one without the other. <u>Id.</u>; *see also* <u>Dooley v. Reiss</u>, 736 F.2d

17  1392, 1395 (9th Cir.1984); <u>Dixon v. City of Lawton</u>, 898 F.2d 1443, 1449 (10th Cir. 1990)

18  (the "essence of a § 1983 claim is the deprivation of the right rather than the conspiracy").

19          The fate of Deadmon's conspiracy allegations thus follows the fate of his Due Process

20  claims.  As the court adopts the R&R recommendation the Due Process claims be

21  dismissed, but rejects granting leave to amend the pleading a third time to attempt to state

22  a cognizable violation, necessarily any claim of conspiracy to violate Due Process rights

23  must also be dismissed.  Accordingly, Defendants' objections to the survival of any portion

24  of a conspiracy claim suggested by the FAC allegations are **SUSTAINED**, and the portion

25  of the R&R recommending a Section 1983 conspiracy claim that survives Rule 12(b)(6)

26  review be read into the FAC is **REJECTED**.

27  \\

28  \\

1

**E.    Emotional Distress Cause Of Action**

2       "Emotional distress" standing alone is not a cognizable prisoner civil rights cause of

3    action.  "No federal civil action may be brought by a prisoner confined in jail, prison, or other

4    correctional facility, for mental or emotional injury suffered while in custody without a prior

5    showing of physical injury."  42 U.S.C. § 1997e(e); *see* Oliver v. Keller, 289 F.3d 623, 627

6    (9th Cir. 2002).  No inference of any physical harm associated with Deadmon's Ad Seg

7    confinement can be drawn from the allegations as originally pled in the Complaint or as pled

8    in the FAC.  His only allusion to any physical consequence summarily states:  "The actions

9    of the defendants caused plaintiff[] mental, emotional, and physical suffering."  FAC ¶ 103.

10   His only other reference to "suffering" alleges a consequence of "mental, emotional, and

11   *psychological* suffering."[22]  FAC ¶ 98 (emphasis added).  He does not refute Defendants'

12   legal proposition the statement of a viable emotional distress cause of action must entail a

13   showing of physical injury, nor do his allegations suggest he could amend the FAC to cure

14   that pleading deficiency.[23]  Rather, he appears to be seeking emotional distress *damages*

15   associated with his Due Process violation allegations, despite his identification of Emotional

16   Distress as a separate cause of action. The court **ADOPTS** the R&R recommendation

17   Defendants' Motion to dismiss this claim be **GRANTED**, but modifies the R&R to deny

18   Deadmon leave to amend to attempt to restate it.  *See* Bell Atlantic, 127 S.Ct. at 1964.

19

**F.    Leave To Amend Denied**

20       A *pro se* litigant is entitled to receive notice of the deficiencies in the complaint and

21   an opportunity to amend before dismissal with prejudice is appropriate, unless the

22   deficiencies cannot be cured by amendment. *See* Lopez v. Smith, 203 F.3d 1122, 1127 (9th

23

24       [22]  Although the FAC supersedes Deadmon's original Complaint, the court judicially notices
     in the prior pleading of his Second cause of action, he described his "suffering" exclusively in terms
25   of emotional distress: "The actions of Defendants have caused and continues [*sic*] to cause plaintiff
     suffering" (Compl. ¶ 115); "The actions of Defendants . . . have caused and continues  [*sic*] to cause
26   plaintiff mental and emotional stress, strain and duress" (Compl. ¶ 116).

27       [23]  Under a heading in his Opposition purporting to address Defendants' Motion arguments
     for dismissal of his emotional distress claim, Deadmon relies on Heck v. Humphrey, 512 U.S. 477,
28   482 (1994), among other distinguishable cases, for inapposite argument that does not address the
     pleading inadequacy of his second cause of action for emotional distress at all.  Opp. pp. 6-7.

Cir. 2000) (*en banc*).  In the Order associated with the *sua sponte* screening required under 28 U.S.C. § 1915(e)(2) and § 1915A, this court granted Deadmon's motion to proceed *in forma pauperis* but dismissed the Complaint for failure to state a claim.  That Order provided him with notice of the specific pleading deficiencies associated with his attempted statement of Fourteenth Amendment due process claims and granted him leave to amend.  Dkt No. 3.  In particular, the Order provided him with the following explanation:

> As currently pleaded, it is clear that Plaintiff's Complaint fails to state a cognizable claim under 42 U.S.C. § 1983. Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. [Citations omitted.]
>
> Plaintiff claims that his due process rights were violated when prison officials failed to properly process his administrative grievances. . . The Fourteenth Amendment to the United States Constitution provides that: "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  "The requirements of procedural due process apply to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569 (1972). State statutes and prison regulations may grant prisoners liberty or property interests sufficient to invoke due process protection. Meachum v. Fano, 427 U.S. 215, 223-27 (1976).  Thus, to state a procedural due process claim Plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000) (citing Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)).
>
> To the extent Plaintiff challenges the procedural adequacy of CDC inmate grievance procedures, his Complaint fails to state a due process claim. [Citation omitted.] This is because the Ninth Circuit has held that **prisoners have no protected *property* interest in an inmate grievance procedure arising directly from the Due Process Clause.** *See* Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure"). . . .
>
> In addition, Plaintiff has failed to plead facts sufficient to show that any named prison official deprived him of a protected ***liberty* interest** by allegedly failing to respond to his prison grievances in a satisfactory manner.  While a liberty interest can arise from state law or prison regulations, Meachum, 427 U.S.

at 223-27, due process protections are implicated only if Plaintiff alleges facts to show that Defendants: (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995); <u>Neal v. Shimoda</u>, 131 F.3d 818, 827-28 (9th Cir. 1997). **Plaintiff pleads no facts to suggest how** the allegedly inadequate review and consideration of his inmate grievances **and his sentence to "ad seg" amounted to a restraint on his freedom not contemplated by his original sentence or how they resulted in "atypical" and "significant hardship."** <u>Sandin</u>, 515 U.S. at 483-84.

Dkt No. 3, 5:5-6:14 (emphasis added).

Deadmon accordingly filed his FAC with benefit of the required deficiencies notice. The court finds his FAC fails to cure the pleading defects, and he still fails to state a claim upon which relief can be granted. In consideration of the two pleadings Deadmon has already filed and the facts already before the court, the court finds further leave to amend would be futile. <u>DeSoto</u>, 957 F.2d at 658; <u>Lopez</u>, 203 F.3d at 1127.

## III.   CONCLUSION AND ORDER

For all the foregoing reasons, **IT IS HEREBY ORDERED**:

1.   The R&R recommendation all claims against Defendants in their official capacity be dismissed with prejudice is **<u>ADOPTED</u>**.

2.   The R&R recommendation defendant Grannis and claims against her associated with the administrative grievance procedure be dismissed with prejudice is **<u>ADOPTED</u>**.

3.   The R&R recommendation Plaintiff's emotional distress cause of action be dismissed is **<u>ADOPTED</u>**.

4.   The R&R recommendation Plaintiff's Fourteenth Amendment due process claims be dismissed is **<u>ADOPTED</u>**, on modified reasoning, but the recommendation leave to amend those claims be granted is **<u>REJECTED</u>**.

5.   Defendants' Objections to the R&R recommendation any conspiracy to violate constitutional rights claim that may be inferred from the FAC allegations be denied in part are **<u>SUSTAINED</u>**.  Any potential conspiracy claim is **<u>DISMISSED</u>** in its entirety.

06cv1382

6.      The R&R recommendation that Plaintiff be granted leave to amend his complaint for a third try to state a cognizable Section 1983 Fourteenth Amendment due process claim is **REJECTED**.

7.      The Motion To Dismiss is **GRANTED,** and this case is terminated in its entirety as to all claims and all parties.

**IT IS SO ORDERED**.

DATED:  February 29, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge